[Civ. No. 22783. Third Dist. June 13, 1984.]

JULIE HARRIS, Plaintiff and Appellant, v.
WALLACE J. SMITH, Defendant and Respondent.

COUNSEL

Memering, DeMers, Honer, Varanini, Hurst & Crowle, Louis A. DeMers, Suzanne Trimble and Betty Wolfe for Plaintiff and Appellant.

Weintraub, Genshlea, Hardy, Erich & Brown, L. Thomas Wagner and Victoria Pynchon for Defendant and Respondent.

OPINION

REGAN, Acting P. J.—Plaintiff appeals from a judgment of dismissal entered after the trial court granted defendant's motion for nonsuit. We affirm.

### FACTS

On the evening of October 21, 1978, Matthew McNamara and John Alexander were returning home from Lake Tahoe traveling west on Highway 50. After determining they were proceeding at a speed of 72 miles per hour, El Dorado County Deputy Sheriff David Kreps stopped their vehicle. Officer Kreps issued a ticket to McNamara, the driver, for speeding.

Officer Kreps detected the odor of alcohol on McNamara's breath, and learned he had been drinking at a casino. McNamara had no difficulty showing his driver's license to Kreps, and his speech was clear. Kreps admin-

istered three field sobriety tests to McNamara: the finger count, the standing balance, and either the finger to nose coordination or another standing balance test. McNamara performed "very well" on the tests, passing all of them. He had no difficulty exiting his vehicle for the tests or entering after completion. McNamara's eyes were clear and normal, but the officer did not notice his pupils. Kreps believed he lacked probable cause to arrest McNamara for drunk driving.

Nine minutes after the stop, Kreps allowed McNamara to proceed home without any further tests, warning him to slow down. About 20 minutes later, while attempting to pass another vehicle in a no-passing area, McNamara's vehicle collided head-on with a vehicle driven by plaintiff. McNamara and Alexander died in the collision, and plaintiff sustained major head injuries, resulting in brain damage.

At the scene of the accident, California Highway Patrol Officer Ray Poff discovered two empty beer cans and a third containing some beer in the front passenger compartment of the McNamara vehicle. McNamara's and Alexander's blood alcohol levels were .17 and .18, respectively.

David Kauderer, a traffic collision consultant and former California Highway Patrolman, testified Officer Kreps should have administered additional field sobriety tests. A physician with a subspecialty in toxicology criticized some of the tests given and suggested authorities should check the pupils of a possible drunk driver. McNamara's girlfriend told the jury he consumed at least a six-pack of beer on a daily basis.

After the accident, Attorney Geoffrey Hansen filed claims against the State of California and El Dorado County and a lawsuit against the owner of the vehicle and McNamara's estate. Because of the severity of plaintiff's injuries and difficulties in the case, Hansen later associated with defendant. Defendant then took over the case. He did not amend plaintiff's complaint to add a cause of action against the state or El Dorado County, and the statute of limitations ran on any such claim.

On April 10, 1981, plaintiff filed her complaint for damages for legal malpractice. Following presentation of plaintiff's case in the underlying action, defendant moved for a nonsuit, claiming the evidence was insufficient for a finding of negligence by Officer Kreps, and that there was no liability in the absence of a relationship between plaintiff and either Officer Kreps or McNamara. The trial court granted the motion, ruling Kreps had no legal duty and was immune from liability. Judgment of dismissal was entered accordingly.

DISCUSSION

I

■ Nonsuit may be granted only when there is no evidence to support a verdict in plaintiff's favor. (*Grudt* v. *City of Los Angeles* (1970) 2 Cal.3d 575, 586-587 [86 Cal.Rptr. 465, 468 P.2d 825].) On appeal from a judgment of nonsuit, we accept plaintiff's evidence, indulge in every favorable inference that can be drawn on behalf of plaintiff, and disregard conflicting evidence. (*Connor* v. *Great Western Sav. & Loan Assn.* (1968) 69 Cal.2d 850, 857 [73 Cal.Rptr. 369, 447 P.2d 609, 39 A.L.R.3d 224].)

■ "The elements of a cause of action in tort for professional negligence are: (1) the duty of the professional to use such skill, prudence, and diligence as other members of [the] profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence. [Citations omitted.]" (*Budd* v. *Nixen* (1971) 6 Cal.3d 195, 200 [98 Cal.Rptr. 849, 491 P.2d 433].) In order to demonstrate negligence, the plaintiff must prove the underlying case was meritorious. (*Walker* v. *Porter* (1974) 44 Cal.App.3d 174, 177-178 [118 Cal.Rptr. 468].)

Plaintiff contends Officer Kreps had an affirmative duty to plaintiff, after he commenced an investigation of McNamara's sobriety, to exercise reasonable care in the performance of his investigation. Moreover, according to plaintiff, under the circumstances of this case El Dorado County is not entitled to the protection of the immunity statutes. Defendant urges Kreps had no such duty and that, in any event, liability is barred by the applicable statutory immunities. (Gov. Code, §§ 815.2, subd. (b), 818.2, 820.2, 846.)

■ The immunity issue does not even arise unless it is established a defendant owes a duty to the plaintiff and would be liable absent any immunity. (*Davidson* v. *City of Westminster* (1982) 32 Cal.3d 197, 201-202 [185 Cal.Rptr. 252, 649 P.2d 894]; *Whitcombe* v. *County of Yolo* (1977) 73 Cal.App.3d 698, 706 [141 Cal.Rptr. 189].) "'Absence of duty is a particularly useful and conceptually more satisfactory rationale where, absent any "special relationship" between the officers and the plaintiff, the alleged tort consists merely in police nonfeasance.'" (*Davidson* v. *City of Westminster, supra,* 32 Cal.3d at p. 202, quoting Van Alstyne, Cal. Government Tort Liability Practice (Cont.Ed.Bar 1980) § 2.65, p. 146.) Here, the negligence claim against Kreps was based on nonfeasance in his alleged failure to prevent McNamara from driving while intoxicated. Accordingly, we first consider the threshold question of duty.

■ One element of a negligence theory required for recovery of damages is the legal duty to use due care. (*City of Sacramento* v. *Superior Court* (1982) 131 Cal.App.3d 395, 402 [182 Cal.Rptr. 443].) It is axiomatic that one has no duty to come to the aid of another. A person who has not created a peril is not liable in tort merely for failure to take affirmative action to assist or protect another unless there is a relationship between them which gives rise to such a duty. (*Stout* v. *City of Porterville* (1983) 148 Cal.App.3d 937, 942 [196 Cal.Rptr. 301].) However, the "good Samaritan" who elects to come to the aid of another is under a duty to exercise due care and is liable if his failure to exercise such care increases the risk of harm, or the harm is suffered because of the other's reliance on the undertaking. (*Williams* v. *State of California* (1983) 34 Cal.3d 18, 23 [192 Cal.Rptr. 233, 664 P.2d 137].)

In *Williams,* the plaintiff was seriously injured when a piece of heated brake drum from a passing truck was propelled through the windshield of the automobile in which she was riding, striking her in the face. Her complaint against the state alleged negligence in the form of nonfeasance: failure of the highway patrol officers who investigated the accident to examine the brake drum part to determine if it was still hot, to identify other witnesses at the scene, or to attempt any investigation or pursuit of the owner or operator of the truck whose brake pad broke and caused plaintiff's injuries. Plaintiff alleged the failure to properly investigate the accident destroyed her opportunity to obtain compensation from the unidentified person who injured her. (*Id.,* at pp. 21-22.)

The *Williams* court concluded the plaintiff had not stated a cause of action because she failed to establish a duty of care owed by the state. (*Id.,* at p. 27.) To establish such a duty, the plaintiff must show an affirmative act which placed her in peril or increased the risk of harm, an omission or failure to act after a promise was made, or a special relationship in which she relied to her detriment on official conduct in a situation of dependency. (*Id.,* at pp. 24-25.)

■ Here, as in *Williams,* none of those factors was present. Officer Kreps did not create the peril to plaintiff; he took no affirmative action which contributed to, increased or changed the risk that otherwise existed; he did not voluntarily assume any responsibility to protect plaintiff; and he made no statement or promise to induce plaintiff's reliance. Assuming, arguendo, plaintiff or any other member of the motoring public was a reasonably foreseeable victim, that fact alone is not enough to establish a special relationship with Officer Kreps imposing on him a duty to use due care. (*Davidson* v. *City of Westminster, supra,* 32 Cal.3d at p. 209.)

Most of the authorities relied on by plaintiff are distinguishable either by the element of reliance or by the defendant's actions in some manner increasing the risk of harm to the plaintiff. For example, in *Mann* v. *State of California* (1977) 70 Cal.App.3d 773, 776-777 [139 Cal.Rptr. 82], a probationary highway patrol officer, coming to the aid of stranded motorists, placed his car with flashing light behind two other cars stalled on the freeway. The officer called a tow truck but then withdrew without warning. He did not wait for the tow truck to line up behind the stalled cars and failed to provide protective flares. Moments later, one of the stalled cars was hit, causing injury to persons standing nearby. The officer's affirmative action increased the risk which otherwise existed, and lulled the injured parties, dependent on the officer, into a false sense of security. (*Id.,* at p. 780; *Williams* v. *State of California, supra,* 34 Cal.3d at p. 25.)

In *Duarte* v. *City of San Jose* (1980) 100 Cal.App.3d 648, 652 [161 Cal.Rptr. 140], a police officer had stopped a vehicle and arrested the driver for driving under the influence of alcohol. He placed the arrested driver without handcuffs in the back seat of the police vehicle and left the motor running while he went to help another officer move the arrested driver's car. The arrested driver sped off in the police car and was pursued by authorities. The chase ended when the arrested driver ran off the road and struck the plaintiff, who was mowing the lawn in his front yard. The Court of Appeal held a police officer's duty to operate his police vehicle with due care includes a duty to third persons not to leave that vehicle unattended under the circumstances of that case. (*Id.,* at p. 659.)

Contrary to plaintiff's suggestion, more is required to establish a duty than mere contact between police and the wrongdoer. Cases such as *Mann* and *Duarte* involved situations in which the police either created the peril or increased the risk which otherwise existed. As we have said, there is no evidence in the instant case police conduct either increased plaintiff's risk of harm or induced plaintiff's reliance to her detriment.

Plaintiff also relies on *Green* v. *City of Livermore* (1981) 117 Cal.App.3d 82 [172 Cal.Rptr. 461]. In *Green,* police had stopped a vehicle with three occupants, all of whom were drunk. Authorities arrested the driver but took no action to prevent the others from driving the car. One of them drove the car, resulting in an accident causing injury and death to innocent third persons. (*Id.,* at p. 86.) The court held once the officers undertook their investigation, they had a duty of care toward the plaintiffs and were no longer immune from liability for their negligence. (*Id.,* at pp. 88-89.)

*Green* is distinguishable. The plaintiffs there pleaded that enactments of the city and its police department imposed a mandatory duty to disable the

automobile, impound it, or remove the keys from the automobile. (*Green, supra,* 117 Cal.App.3d at pp. 89-90.) Because the officers' duty to remove the keys was founded on an enactment imposing a mandatory duty pursuant to Government Code section 815.6, the *Green* plaintiffs did not have to plead the existence of any special relationship in order to create a duty of care. (*State of California (Perry)* v. *Superior Court* (1984) 150 Cal.App.3d 848, 863 [197 Cal.Rptr. 914].)

To the extent *Green* predicated a duty of care to the public at large on general tort theory, apart from the enactment, we conclude *Davidson* and *Williams* implicitly overrule its analysis.

In *Green,* as here, there was no detrimental reliance by the plaintiffs on the words or conduct of the police officer because the plaintiffs had no knowledge of the officer's stop of the accident-causing motorist before the accident. Accordingly, no special relationship existed.

Nor did the officer in *Green* create the peril; rather, the peril was created when driver and passengers became intoxicated and entered the car. The same is true here.

The only viable question in Green, as here, is whether the officer acted *affirmatively* to increase the risk of harm. (*Williams* v. *State of California, supra,* 34 Cal.3d at p. 24; *McCorkle* v. *Los Angeles* (1969) 70 Cal.2d 252 [74 Cal.Rptr. 389, 449 P.2d 453].)

However, the facts of *Davidson* demonstrate that a police officer does not act affirmatively to increase the risk of harm simply by failing to stop a citizen from acting dangerously. There, police had solid information that a suspect in a laundromat was dangerous. They failed to intercede or to warn another citizen in the laundromat, whom the suspect later stabbed. The Supreme Court found no special relationship, no duty of care toward the victim, and no negligence. (*Davidson, supra,* 32 Cal.3d at p. 209.) The court said, "[The officers'] conduct did not change the risk which would have existed in their absence. There is simply no reason to speculate that anyone—Yolanda or Blackmun, victim or assailant—would have acted differently had the officers not placed the laundromat under surveillance." (*Id.,* at p. 208.) Similarly, in the instant case the conduct of Officer Kreps did not alter any risk which already was present.

"In considering the existence of a 'duty' in a given case, several factors require consideration including 'the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the

moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved. [Citations.]' (*Rowland* v. *Christian* (1968) 69 Cal.2d 108, 113 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496].) . . . When public agencies are involved, additional elements include 'the extent of [the agency's] powers, the role imposed upon it by law and the limitations imposed upon it by budget; . . .' [Citations.]" *Thompson* v. *County of Alameda* (1980) 27 Cal.3d 741, 750 [167 Cal.Rptr. 70, 614 P.2d 728, 12 A.L.R.4th 701].)

▮ Plaintiff ignores all of the above factors except foreseeability of harm. Examination of some of the other factors affords plaintiff little succor. First, we discern only a tenuous connection between the officer's conduct and plaintiff's injury. Kreps testified, without challenge, that he lacked probable cause to arrest McNamara after the latter passed three different sobriety tests and appeared sober and coherent. Expert testimony at trial conceded the subjectivity of determining how many field sobriety tests to give and acknowledged intoxicated persons frequently manage to pass such tests.

Nor do we believe any grave moral blame may be attached to the officer's conduct. There was no suggestion of any deficiency in the manner of the investigation, other than testimony Kreps should have performed more tests. Moreover, to require a police officer to perform an unknown number of tests on suspected drunk drivers would not necessarily effectuate the policy of preventing future harm. On the contrary, in our estimation such a burden would hamper law enforcement in effectively carrying out its duties and impinge on the rights of innocent citizens.

*Jackson* v. *Clements* (1983) 146 Cal.App.3d 983 [194 Cal.Rptr. 553] is on all fours with the instant case. There, plaintiffs alleged police officers investigated a party where alcohol was served to minors, including the defendants and the minor victim. Based on their observations at the party, the officers knew the minors were drinking alcohol in an amount sufficient to render them intoxicated. They also allegedly knew the defendants were too intoxicated to drive and that each intended to drive away from the party. In spite of that knowledge, police failed to stop the consumption of alcohol at the party and failed to prevent the defendants from driving while intoxicated. As a result of the officers' alleged negligence, the defendants caused fatal injuries to plaintiffs' decedents. (*Id.*, at pp. 985-986.)

Plaintiffs contended once the officers undertook to investigate the party and observed the intoxicated condition of the minors, they had a duty to

prevent the minor defendants from driving and to protect a minor victim from riding with one of the minors. (*Id.*, at p. 986.)

The Court of Appeal rejected their contention, holding under the circumstances of the case there was no relationship with the victims which would impose on the police a duty to control the subsequent behavior of the wrongdoers. (*Id.*, at p. 988.)

Similarly, in the instant case plaintiff has failed to establish any relationship between Officer Kreps and herself or any conduct on his part creating a duty to use due care in the course of his investigation. Accordingly, because El Dorado County could not have been liable to plaintiff for her injury, defendant in this malpractice action cannot be liable to plaintiff for failing to file an unmeritorious lawsuit against the county.

## II

It is a matter of great urgency and the public policy of this state to prevent drunk driving. (*Taylor* v. *Superior Court* (1979) 24 Cal.3d 890, 896-897 [157 Cal.Rptr. 693, 598 P.2d 854].) However, there is no authority for the recognition of a cause of action against Officer Kreps in the circumstances of this case. (See *Jackson* v. *Clements, supra,* 146 Cal.App.3d at p. 989.) As the Supreme Court noted in refusing to impose a duty on police officers to warn potential victims, recognition of such a cause of action "would raise difficult problems of causation and public policy." (*Davidson* v. *City of Westminster, supra,* 32 Cal.3d at p. 208.)

Because we conclude Officer Kreps neither created a peril, increased plaintiff's risk of harm nor created a special relationship that would establish a duty of care, we do not consider the issue of statutory immunity. In light of our disposition, plaintiff's claim the trial court erred in refusing to permit her to prove her case had settlement value is moot.

The judgment is affirmed.

Sparks, J., and Sims, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 8, 1984.