[No. F005473. Fifth Dist. June 30, 1986.]

GRACIELA MARTINEZ, Plaintiff and Appellant, v.
WILLIAM HAGOPIAN, Defendant and Respondent.

1224

## COUNSEL

Robert J. Filippi and Gordon R. Johnston for Plaintiff and Appellant.

Eldridge, Anderson & Weakley and Benjamin L. Ratliff for Defendant and Respondent.

## OPINION

**FRANSON, Acting P. J.—**

### STATEMENT OF THE CASE

Appellant Graciela Martinez and her five children filed a complaint for the wrongful death of Graciela Martinez's husband, Jorge Martinez, against defendants William Hagopian (respondent in this appeal), Artemio Solano, and Arcadio Solano. The complaint alleged three causes of action based on general negligence, premises liability, and assault and battery. An amendment to the complaint added a cause of action for negligent infliction of emotional distress and a surviving cause of action for personal injuries on behalf of the decedent under Probate Code section 573.

After unsuccessful cross-motions for summary judgment and a petition for extraordinary relief to this court by respondent, the trial court granted respondent's motion for summary judgment pursuant to an alternative writ of mandate. Judgment was entered, and the complaint was dismissed as to respondent.

Although appellant filed a notice of appeal from the minute order entered by the trial court, we have elected to construe the appeal to be from the judgment. (Cal. Rules of Court, rule 1; *Helfer* v. *Hubert* (1962) 208 Cal.App.2d 22, 24-25 [24 Cal.Rptr. 900].)

### STATEMENT OF THE FACTS

The facts are taken from the deposition testimony of respondent, William Hagopian; respondent's foreman, Salvadore Lopez; appellant, Graciela Martinez; and appellant's brother-in-law, Salvador Martinez.

Respondent farms approximately 800 acres of vineyards as a partner in Hagopian Farms. During the harvest, which begins in September and continues through the middle of October, Hagopian Farms hires 80 to 100 farm laborers. Fifty to seventy-five percent of these laborers live in the three labor camps located on the farm. In housing the workers, respondent attempts to keep together friends, families, and persons speaking the same Spanish dialect. The housing facilities are provided rent free to the laborers so that the farm will have a work force available during the harvest.

The laborers work five to six days a week from sunup until 2 or 3 p.m. The laborers are not permitted to drink alcoholic beverages during working hours. After the workday is over, however, laborers are free to do "anything at the time the law permit[s] them to do." Although the closest town is approximately 12 miles away and the grocery store is 4 miles away from the camps, Hagopian Farms does not supply any food or beverages to the laborers. There are no restrictions on visitors at the labor camps.

On October 9, 1982, at approximately 9 p.m., appellant, her husband Jorge Martinez (hereafter decedent), their five children, and decedent's father arrived at Hagopian Farms to visit relatives who were living in one of the labor camps. Decedent's brother, Salvador Martinez, Salvador's wife, Raquel, and their children arrived at the same time in a separate car. The women and the children remained in the two cars, and the men got out to visit with their relatives.

Decedent had been drinking beer before he arrived at Hagopian Farms. Decedent did not bring any beer with him but continued to drink beer supplied by his relatives during the two hours they were at the labor camp.

Sometime during that two hours, Raquel Martinez got out of her car and told her husband, Salvador, that someone was walking around her vehicle, that she was afraid, and that she wanted Salvador to keep her company. Salvador began arguing with this individual, and the man threatened Salvador

with a knife. Decedent came outside and apparently told this individual to "leave that knife alone." Decedent struck this man, and when the man kept lunging at him, decedent pushed him through a plate glass window.

During the fight, decedent was stabbed in the abdomen. None of the witnesses who testified at deposition saw the person who stabbed decedent. However, both Salvador Martinez and Salvadore Lopez believed that it was one of the Solano brothers.

The Solano brothers were working for Hagopian Farms at this time. They had been coming to the farm at harvest for approximately three years and had never caused any problems. Artemio Solano was arrested and released on his own recognizance. Arcadio Solano was never found.

## DISCUSSION

*The nonapplicability of respondeat superior.*

Appellant contends the trial court erred in granting respondent's summary judgment motion on the issue of respondeat superior.[1] Thus, we must decide if the deposition testimony, when liberally construed as to appellant's position, fails to present a triable issue of fact on the question of respondeat superior and is sufficient to sustain a judgment in respondent's favor. (*Stationers Corp.* v. *Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785].)

Under the respondeat superior doctrine, an employer's liability extends to torts of an employee committed within the scope of his employment. (*Munyon* v. *Ole's, Inc.* (1982) 136 Cal.App.3d 697, 701 [186 Cal.Rptr. 424].) This includes willful and malicious torts as well as negligence. (*Carr* v. *Wm. C. Crowell Co.* (1946) 28 Cal.2d 652 [171 P.2d 5].) Nevertheless, if an employee inflicts an injury out of personal malice, not engendered by the employment, the employer is not liable. (*Id.* at p. 656.)

The justification for respondeat superior is "a rule of policy, a deliberate allocation of a risk." The employer is liable for injuries caused by risks inherent in or created by the enterprise because he, rather than the

---

[1]Since appellant's opening brief does not challenge the summary judgment on the causes of action based on theories other than respondeat superior, we do not treat those issues raised for the first time in appellant's reply brief—appellant not showing good reason for failure to raise them before. (See 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 496, pp. 484-485.)

innocent injured party, is best able to absorb and spread the risk through prices, rates, or liability insurance. (*Hinman* v. *Westinghouse Elec. Co.* (1970) 2 Cal.3d 956, 959-960 [88 Cal.Rptr. 188, 471 P.2d 988].) However, respondeat superior is not merely a justification for reaching a "deep pocket" or based only upon an "elaborate economic theory regarding optimal resource allocation. It is grounded upon 'a deeply rooted sentiment that a business enterprise cannot justly disclaim responsibility for accidents which may fairly be said to be characteristic of its activities.' [Citations.]" (*Rodgers* v. *Kemper Constr. Co.* (1975) 50 Cal.App.3d 608, 618 [124 Cal.Rptr. 143].)

■ The determination as to whether an employee committed a tort during the course of his employment turns on whether "1) the act performed was either required or 'incident to his duties' [citation], or 2) the employee's misconduct could be reasonably foreseen by the employer in any event [citations]." (*Clark Equipment Co.* v. *Wheat* (1979) 92 Cal.App.3d 503, 520 [154 Cal.Rptr. 874].) The employee's actions need only fall within the range of actions covered by either part of this two-pronged test for the employer to be held liable. (*Alma W.* v. *Oakland Unified School Dist.* (1981) 123 Cal.App.3d 133, 139 [176 Cal.Rptr. 287].) ■ Here, appellant contends the employee's actions were foreseeable and thus fall within the second prong of this test.

■ *Rodgers* v. *Kemper Constr. Co., supra,* sets forth a test for application of this foreseeability concept: "One way to determine whether a risk is inherent in, or created by, an enterprise is to ask whether the actual occurrence was a generally foreseeable consequence of the activity. However, 'foreseeability' in this context must be distinguished from 'foreseeability' as a test for negligence. In the latter sense 'foreseeable' means a level of probability which would lead a prudent person to take effective precautions whereas 'foreseeability' as a test for *respondeat superior* merely means that in the context of the particular enterprise an employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business. [Citations.] In other words, where the question is one of vicarious liability, the inquiry should be whether the risk was one 'that may fairly be regarded as typical of or broadly incidental' to the enterprise undertaken by the employer. [Citation.]" (50 Cal.App.3d at pp. 618-619, quoting from 2 Harper & James, The Law of Torts, p. 1376.)

■ Appellant relies primarily on *Rodgers* v. *Kemper Constr. Co.* to support her position that the assault was foreseeable within the respondeat superior meaning of foreseeability. In *Rodgers,* the court concluded there was substantial evidence in support of holding defendant, a subcontractor,

liable vicariously where two of defendant's employees, who had remained on the jobsite drinking beer after their shift ended, assaulted and injured plaintiffs, employees of the general contractor, when one of the plaintiffs refused to give defendant's employees a ride on a bulldozer. The court found that the fact that the assault occurred after hours did not relieve defendant of liability since the employees had the implied or express permission of defendant to engage in the after-hours social activity. Further, the employees' remaining on the jobsite was "conceivably" of some benefit to defendant if additional help was needed. The court also found there was no evidence of personal malice unrelated to the employment. Rather, *the dispute* leading to the assault *was an outgrowth of the employment.* The quarrel on the jobsite arose over the rights and duties of defendant's off-duty employees and might normally be expected to occur during the course of a major construction job. Thus, it could rationally be determined that the employees' conduct was not so "unusual or startling" that it would be unfair to include the loss resulting from it among the other costs of the employer's business. (*Rodgers* v. *Kemper Constr. Co., supra,* 50 Cal.App.3d 608, 618-619.)

Appellant relies on the following similarities between this case and *Rodgers*:

1. Respondent's employees were residing on the premises for the benefit and convenience of respondent;

2. After-hours socializing and drinking occurred on the premises with either the express or implied permission of respondent; and

3. The injury to decedent was the result of the interaction between respondent's employees and visitors to the ranch who were permitted to visit by respondent.

Construing the evidence liberally in favor of appellant and assuming that the above facts are true, appellant's analogy to *Rodgers* misses a crucial element. The dispute leading to the assault was not an outgrowth of the employment relationship. Before liability attaches, there must be a nexus between the employment and the activity which results in an injury that is foreseeable. (*Harris* v. *Trojan Fireworks Co.* (1981) 120 Cal.App.3d 157 [174 Cal.Rptr. 452].) The test is not whether it is foreseeable that employees might act in such a way as to give rise to civil liability but rather, whether the employee's act is foreseeable *in light of the duties the employee is hired to perform.* (*Alma W.* v. *Oakland Unified School Dist., supra,* 123 Cal.App.3d 133.)

This assault arose out of an argument between the visitors and the workers concerning one worker's treatment of a visitor's wife. The dispute had no connection with any aspect of harvesting grapes. The fact that both the victim and his assailant had been drinking, that such drinking is common among farmworkers (as well as other persons) during their after-hours social activities, and that drinking often leads to quarrels and violence given the frailty of human nature, does not provide a sufficient link to the worker's employment to impose vicarious liability on the employer. To hold otherwise would be to essentially impose a theory of strict liability on the employer for all employee torts during after-hours social activities on the employer's premises, a result not permitted under settled law. Thus, we conclude that the instant assault cannot "fairly be regarded as typical of or broadly incidental to" the farming activities here involved. (2 Harper & James, The Law of Torts, p. 1376.)

The judgment is affirmed.

Martin, J., and Best, J., concurred.