[Civ. No. 6301. Fifth Dist. Nov. 10, 1983.]

MICHAEL EUGENE STOUT et al., Plaintiffs and Appellants, v. CITY OF PORTERVILLE et al., Defendants and Respondents.

**COUNSEL**

George A. Carter and John W. Morris for Plaintiffs and Appellants.

Hurlbutt, Clevenger, Long & Vortmann, Robert P. Long and Philip B. Laird, Jr., for Defendants and Respondents.

George Deukmejian and John K. Van de Kamp, Attorneys General, Michael Franchetti, Chief Deputy Attorney General, Willard A. Shank, Chief Assistant Attorney General, Marvin Goldsmith, Assistant Attorney General, Seward L. Andrews, Craig Modlin and Bruce J. Braverman, Deputy Attorneys General, as Amici Curiae on behalf of Defendants and Respondents.

OPINION

CAETON, J.*—This is an appeal following a judgment of dismissal after the Superior Court of the County of Tulare sustained the respondents' demurrer.

On December 30, 1979, at approximately 1:30 in the morning, appellant Michael Eugene Stout was walking along Main Street in the City of Porterville (hereinafter City). At about that time, Officer Clarence Semonious of City's police department stopped and questioned Stout regarding the reason for his presence in the area and regarding his state of sobriety. Stout alleges that at the time he was questioned by Officer Semonious, he was voluntarily intoxicated and was unable to provide reasonable care for himself. Officer Semonious did not apprehend Stout and place him in some form of custody, either arrest and jail or custody in a detoxification unit, as defined in the Welfare and Institutions Code. Stout alleges that Officer Semonious' failure to place him in custody caused the subsequent injuries he suffered when he was later struck by a vehicle driven by a third party defendant.

Appellants filed a complaint for damages. The first cause of action alleged that City and Officer Semonious were responsible for Stout's injuries because Semonious refused to arrest him or take him to a facility prescribed by Penal Code section 647, subdivision (ff). The second cause of action was against the driver of the vehicle which struck Mr. Stout. The third cause of action was brought by Stout's wife, Lisbeth A. Stout, for damages suffered as a result of Stout's inability to "perform his duties as a husband."

The City, on behalf of itself and Officer Semonious, demurred. The superior court sustained the demurrer with leave to amend relying upon the immunity provided under Government Code section 846 in reaching its determination that the respondents could in no way be found liable for the alleged negligent failure to make an arrest. The court then ruled that the appellants would be granted leave to amend their complaint within the confines of the court's ruling. The court indicated that the appellants would be afforded an opportunity to plead, if they were able to do so, a cause of action based upon allegations that Officer Semonious had already exercised his discretion, made a determination that appellant Michael Stout had violated Penal Code section 647, subdivision (f), and thereafter failed to exercise an alleged mandatory duty as defined in the provisions of Penal Code section 647, subdivision (ff).

A first amended complaint was thereafter filed. This first amended complaint was like the original complaint except that it added the allegation that

*Assigned by the Chairperson of the Judicial Council.

there was reasonably available to Officer Semonious a detoxification center authorized to receive persons under Penal Code section 647, subdivision (ff), and that Semonious was reasonably able to take Michael Stout to the detoxification center but refused to do so.

The City filed a demurrer to the first amended complaint. This demurrer was sustained without leave to amend on the ground that Penal Code section 647, subdivision (ff), is not mandatory and that, therefore, both the City and Officer Semonious were immune under Government Code section 818.2. Moreover, the court ruled that as between appellant Stout and the City and Semonious, "the proximate cause of the injury was [Stout's] intoxication."

Appellants appealed following a judgment of dismissal.

Appellants contend that the City and Officer Semonious had a common law duty of care to Stout because, according to the provisions of Government Code section 815.2, a "private person would have owed a duty of care to Stout."[1] Appellants recognize that generally an individual is not required to rescue another from peril that is not of the individual's own making. However, appellants assert that if one enters upon an affirmative course of conduct affecting the interests of another, he assumes a special relationship with that person. He therefore assumes a duty to act and will therefore be liable for negligent acts or omissions. Appellants contend that Officer Semonious assumed a special relationship with him and therefore should be liable for appellants' injuries. Appellants contend that Stout was relatively helpless and in peril when Semonious chose to stop and investigate. "He became aware of the foreseeable danger to Stout. By temporarily detaining him, he took charge of him. It may reasonably be assumed that during the detention, Stout, due to Semonious' acts, was in a position of safety. Semonious assumed a special relationship with Stout. He then left without providing any protection to Stout, and thus *returned him to a position of peril.*" We reject this contention for want of authority.

█ The existence of a duty "is entirely a question of law, to be determined by reference to the body of statutes, rules, principles and precedents which make up the law; and it must be determined only by the court." (Prosser, Torts (4th ed. 1971) § 37, p. 206.)

---

[1]Government Code section 815.2, subdivision (a), provides that a public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative. And, with exceptions, a public employee is liable for injury by his act or omission to the same extent as a private person. (Gov. Code, § 820, subd. (a).)

■ As a rule, one has no duty to come to the aid of another. A person who has not created a peril is not liable in tort merely for failure to take affirmative action to assist or protect another unless there is some relationship between them which gives rise to such a duty. (Rest.2d Torts, § 314; 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 554, p. 2821.) ■ Also pertinent here is the role of the volunteer who, having no initial duty to do so, undertakes to come to the aid of another—the "good Samaritan." He is under a duty to exercise due care in performance and is liable if (a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking. (Rest.2d Torts, § 323; see *Williams* v. *State of California* (1983) 34 Cal.3d 18, 23 [192 Cal.Rptr. 233, 664 P.2d 137].)

As has been recognized by the California Supreme Court, "[a]pplication of these general principles in the area of law enforcement and other police activities has produced some confusion and conflict." (*Ibid.*) "To an extent, the concepts are muddied by widely held misconceptions concerning the duty owed by police to individual members of the general public." (*Id.*, at pp. 23-24.) ■ As has been stated, "'[a] person does not, by becoming a police officer, insulate himself from any of the basic duties which everyone owes to other people, *but neither does he assume any greater obligation to others individually. The only additional duty undertaken by accepting employment as a police officer is the duty owed to the public at large.*'" (*Id.*, at p. 24, fn. 3, citing *Warren* v. *District of Columbia* (D.C.App. 1981) 444 A.2d 1, 8.)

An affirmative act which places the person in peril or increases the risk of harm may be negligence, as in *McCorkle* v. *Los Angeles* (1969) 70 Cal.2d 252 [74 Cal.Rptr. 389, 449 P.2d 453], where an officer investigating an accident directed the plaintiff to follow him into the middle of the intersection where the plaintiff was hit by another car. The negligence may also constitute an omission or failure to act, as in *Morgan* v. *County of Yuba* (1964) 230 Cal.App.2d 938 [41 Cal.Rptr. 508], where a deputy sheriff promised to warn a decedent if a prisoner, who had made threats on her life, was released. The county was held liable when the sheriff failed to warn. (See also *Williams* v. *State of California, supra,* 34 Cal.3d at p. 24.)

Recovery has been denied, however, for injuries caused by the failure of police personnel to respond to requests for assistance, the failure to investigate properly, or the failure to investigate at all, where the police had not induced reliance on a promise, express or implied, that they would provide protection. (*Id.*, at p. 25; *Hartzler* v. *City of San Jose* (1975) 46 Cal.App.3d 6 [120 Cal.Rptr. 5]; *Antique Arts Corp.* v. *City of Torrance* (1974) 39

Cal.App.3d 588 [114 Cal.Rptr. 332]; *McCarthy* v. *Frost* (1973) 33 Cal.App.3d 872 [109 Cal.Rptr. 470].)

A verbal promise and reliance thereon are not necessarily indispensable elements of a special relationship. Such a relationship has also been found when the *conduct* of a police officer, in a situation of dependency, results in detrimental reliance on him for protection. A special relationship based on such dependency was found in *Mann* v. *State of California* (1977) 70 Cal.App.3d 773 [139 Cal.Rptr. 82]. Appellants rely heavily on this case.

In *Mann,* highway patrolmen, coming to the aid of a stranded motorist, placed their car with flashing lights behind two cars stalled on the freeway. After calling the tow truck, the officers withdrew without warning; they did not wait for the tow truck to line up behind the stalled cars or provide the alternative protection of flares. Minutes later, the stalled cars were side-swiped by a passing car and the persons nearby were injured. In *Mann,* the officers' conduct contributed to, increased and changed the risk which would have otherwise existed. They stopped to investigate and they took affirmative steps to provide assistance, lulled the injured parties into a false sense of security and perhaps preventing other assistance from being sought. The *Mann* court concluded that the State of California could be held liable for these negligent omissions only if a special relationship were found between the highway patrol officer and the plaintiff. (*Id.*, at p. 779.) Recognizing that the "special relationship" doctrine is an expanding concept in court law and analyzing the facts of the case, the court found that a special relationship could have been found in the case before it. (*Ibid.*) "As the Restatement suggests, the law appears to be heading toward a recognition of a duty to aid or protect in any relation of dependence or of mutual dependence." (*Id.*, at pp. 779-780.) The court found that the stranded motorist in *Mann* was dependent upon the highway patrol officer. (*Id.*, at p. 780.)[2]

Appellants originally cited *Clemente* v. *State of California* (1980) 101 Cal.App.3d 374 [161 Cal.Rptr. 799] decided by the *Mann* court. In *Clemente,* the court found a special relationship between a highway patrolman and a pedestrian who had been struck by a motorcyclist. The patrolman stopped to investigate but did not obtain the identity of the motorcyclist. The court found a duty to act based solely upon the fact of "dependence."

However, appellants cannot benefit from the decision in *Clemente* v. *State of California* because *Williams* v. *State of California* disapproved *Clemente.*

---

[2]The Legislature purported to overrule *Mann* by enacting section 820.25 of the Government Code as an urgency measure in 1979.

(*Williams* v. *State of California, supra,* 34 Cal.3d at p. 28, fn. 9.) Simply put, the *Williams* court did not want to extend the *Mann* situation—where the officer had undertaken affirmative steps to protect the plaintiff from future physical harm—to the one presented in *Williams*—failure to investigate the cause and source of harm already incurred. (*Williams, supra,* at p. 26.) "Students of the Bible will recall that while the Samaritan dressed the victim's wounds and provided him with food and shelter, he took no steps to ascertain the identity of the thieves who had wounded and stripped the victim and left him half dead." (*Ibid.*; see also *Winkelman* v. *City of Sunnyvale* (1976) 59 Cal.App.3d 509 [130 Cal.Rptr. 690], cited with approval in *Williams* v. *State of California, supra,* 34 Cal.3d at p. 26.)

In *Williams,* the plaintiff was injured when a piece of heated brake drum from a passing truck was propelled through the windshield of her automobile. She brought suit against the state alleging nonfeasance—failure to test for the heat of the object which struck her, failure to secure identification of witnesses, and failure to attempt investigation or pursuit of the owner or occupant of the truck whose brake drum had caused her injuries. (*Id.,* at p. 27.) There were no allegations in the plaintiff's complaint that the officers assured her, either expressly or impliedly, that they would do any of the acts that plaintiff faulted them for not doing, no allegations that they conducted themselves in such a manner as to warrant reliance upon them to do the acts which plaintiff alleged they should have done and, finally, there was no hint that the officers prevented the plaintiff from conducting an investigation of her own. (*Ibid.*)

The *Williams* court concluded that the plaintiff had not stated a cause of action because she failed to establish a duty of care owed by the state. The officers did not create the peril in which plaintiff found herself; they took no affirmative action which contributed to, increased, or changed the risk which would have otherwise existed; there was no indication that they voluntarily assumed any responsibility to protect plaintiff's prospects for recovery by civil litigation; and there were no allegations of the requisite factors to a finding of special relationship, namely "detrimental reliance by the plaintiff on the officers' conduct, statements made by them which induced a false sense of security and thereby worsened her position." (*Id.,* at pp. 27-28, fn. omitted.) In the case before us, appellants' allegations suffer from a similar flaw.

Moreover, we believe that *Mann* v. *State of California, supra,* 70 Cal.App.3d 773 is distinguishable from the instant case. In *Mann,* the highway patrolmen took affirmative steps to come to the aid of the stranded motorist. The patrolmen placed their car with flashing lights behind two cars stalled on the freeway. The officers called a tow truck but then with-

drew without warning. They did not wait for the tow truck to line up behind the stalled cars and did not provide the alternative protection of flares. Thus, the highway patrolmen in *Mann* took affirmative action which contributed to, increased, or changed the risk which would have otherwise existed. (*Williams* v. *State of California, supra,* 34 Cal.3d 18, 27.) ■ However, in the instant case, appellants' complaint merely pleaded that Officer Semonious stopped appellant Michael Stout and questioned him as to the reasons for his presence on Main Street and questioned him as to his state of sobriety. Appellants did *not* allege that the officer took affirmative action which contributed to, increased, or changed the risk which would have otherwise existed; there is no indication that Officer Semonious voluntarily assumed any responsibility to protect appellants' prospects for recovery by civil litigation; and there are no allegations of the requisite factors to a finding of special relationship, namely "detrimental reliance by the plaintiff on the officers' conduct, statements made by them which induced a false sense of security and thereby worsened [appellant's] position." (*Id.,* at pp. 27-28.) Appellants did not allege that Officer Semonious assured Michael Stout he would take care of him or by his words or conduct induced him to rely on the officer's protection. Appellants did not allege that the officer in any way induced him into a false sense of security. In sum, appellants failed to allege a common law legal duty owed to them by City and/or Officer Semonious.

■ Appellants next contend that Officer Semonious breached a mandatory duty pursuant to Penal Code section 647, subdivision (ff). Government Code section 815.6 provides that where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty.

Penal Code section 647, subdivision (ff), at the time relevant to this appeal, provided in pertinent part: "When a person has violated subdivision (f) of this section, a peace officer, if he is reasonably able to do so, shall place the person, or cause him to be placed, in civil protective custody. Such person shall be taken to a facility, designated pursuant to Section 5170 of the Welfare and Institutions Code, for the 72-hour treatment and evaluation of inebriates."[3]

---

[3]Penal Code section 647, subdivision (f), provides, in relevant part, that it is a misdemeanor for anyone to be "found in any public place under the influence of intoxicating liquor, . . . in such a condition that he is unable to exercise care for his own safety or the safety of others, . . ."

Appellants contend that the term "shall" in Penal Code section 647, subdivision (ff), creates a mandatory obligation on the public entity within the meaning of Government Code section 815.6. Appellants' reliance on *People v. Ambellas* (1978) 85 Cal.App.3d Supp. 24 [149 Cal.Rptr. 680] is misplaced. In *Ambellas,* a defendant was convicted of three violations of Penal Code section 647, subdivision (f), making it a misdemeanor to be drunk in public in such a condition that one is unable to exercise care for his or her own safety or that of others. In one of these actions, no evidence was received with respect to any efforts by the arresting officers to comply with Penal Code section 647, subdivision (ff), which requires an officer arresting a person for violation of the statute, if he is reasonably able to do so, to place him in a civil detoxification center maintained for the 72-hour treatment and evaluation of inebriates. (Welf. & Inst. Code, § 5170.) The defendant argued that the provisions of subdivision (ff) are part of subdivision (f). He argued that a simple violation of subdivision (f) is not an offense unless it is first shown, under the language of subdivision (ff), that the officer was not reasonably able to transport the persons arrested to a detoxification facility. (*People v. Ambellas, supra,* 85 Cal.App.3d Supp. at p. 30.) The court rejected the argument that subdivision (ff) is part of the offense described in subdivision (f). The court noted that by very clear statutory language subdivision (ff) cannot start to come into play until a person "has violated" subdivision (f). The court stated that subdivisions (f) and (ff) are not in conflict, but rather, they offer alternatives. (*Ambellas, supra,* at Supp. p. 31, citing *People v. Superior Court (Colon)* (1972) 29 Cal.App.3d 397, 401 [105 Cal.Rptr. 695].) The court went on to hold that once a defendant raises the issue of compliance with subdivision (ff) in a subdivision (f) prosecution, the People must prove the reasonable inability to comply with subdivision (ff). (*Ambellas, supra,* at Supp. pp. 31-32.) Stressing the term "shall," the court noted that the statute must be accorded a mandatory effect. (*Id.,* at Supp. p. 32.)[4] However, no language in *Ambellas* suggests the mandate of subdivision (ff) refers to the initiation of police intervention with the public inebriate. Rather, the court states that subdivision (ff) provides an alternative disposition of the public inebriate to criminal prosecution. If the police determine probable cause exists for believing a person comes within the provisions of subdivision (f) and the police decide to arrest that person, then and only then must they also decide the appropriateness of taking that person to a treatment facility. Assuming

---

[4]The *Ambellas* court would require that the defendant initially raise the subdivision (ff) issue and bear the ultimate burden. However, the *Ambellas* court would place on the People the requirement of proceeding with evidence on the subject once the defendant raises the issue. (*Id.,* at Supp. p. 33.) "Accordingly, we hold that when a defendant suggests that the People's failure to comply with subdivision (ff) should result in his acquittal, the burden shifts to the People to produce evidence of the reasons for the failure." (*Id.,* at Supp. p. 34; see also *Meyer v. City of Oakland* (1980) 107 Cal.App.3d 770, 777-778 [166 Cal.Rptr. 79].)

the mandatory effect[5] accorded to the statute by *Ambellas* places a duty on the arresting officer, as opposed to a condition precedent to a criminal prosecution (see *People* v. *Ambellas, supra,* 85 Cal.App.3d Supp. at p. 34), the duty is to only make a reasonable decision concerning the appropriate disposition of a lawfully arrested drunk. Appellants suggest that the "mandate" refers to taking the inebriate into custody and transporting him to a treatment facility. To adopt this suggestion would lead to absurd results. For example, in those counties with no treatment facility the police could leave the drunk on the street with no cause of action, while in other counties with such facilities a similarly situated drunk would have a cause of action. One could expect the purpose of subdivision (ff) would be quickly thwarted by a rush of counties withdrawing from participation in this therapeutic model.

Finally, any duty arising out of Penal Code section 647, subdivision (ff), must relate to a particular kind of harm.

The potential for harm to himself or others of the public inebriate, *in public,* is recognized by Penal Code section 647, subdivision (f), and the prevention of such harm may be one of the purposes of subdivision (f). Subdivision (ff) is aimed at the treatment of the public inebriate after he is in the arms of the law. The purposes of subdivision (ff) concern possible diminishment of the "revolving-door," inhumane treatment in the criminal system of persons who are "sick." (*People* v. *Superior Court (Colon), supra,* 29 Cal.App.3d 397, 400.)

The dangers of the street are addressed by subdivision (f). Minimizing these dangers is not the principal purpose of subdivision (ff). Therefore, the kind of harm appellants incurred is not the kind of harm addressed by subdivision (ff) whether or not it places a duty on the police. The purpose of Penal Code section 647, subdivision (ff), is not to create a new cause of action in the inebriate.

---

[5]It has been stated that not every statute which uses the word "shall" is obligatory rather than permissive. Although statutory language is, of course, a most important guide in determining legislative intent, there are unquestionably instances in which other factors will indicate that apparent obligatory language was not intended to foreclose the governmental entities' or officers' exercise of discretion. (*Morris* v. *County of Marin* (1977) 18 Cal.3d 901, 910-911, fn. 6 [136 Cal.Rptr. 251, 559 P.2d 606].) For example, see Government Code section 26501 ("[a] district attorney shall institute proceedings . . . for the arrest of persons . . . reasonably suspected of public offenses when he has information that such offenses have been committed"), construed in *Taliaferro* v. *Locke* (1960) 182 Cal.App.2d 752, 757 [6 Cal.Rptr. 813]. There is no simple, mechanical test for determining whether a provision should be given "directory" or "mandatory" effect. (*Morris* v. *County of Marin, supra,* 18 Cal.3d at pp. 909-910, citing *Pulcifer* v. *County of Alameda* (1946) 29 Cal.2d 258, 262 [175 P.2d 1]; see also *People* v. *McGee* (1977) 19 Cal.3d 948, 961-962 [140 Cal.Rptr. 657, 568 P.2d 382].)

Because we find no duty of care owed to Stout by Officer Semonious, it is unnecessary to determine the remaining issue of whether there are any governmental immunities prohibiting suit against Officer Semonious and the City.

The judgment is affirmed.

Hanson (P. D.), Acting P. J., and Martin, J., concurred.