[No. F063590. Fifth Dist. Jan. 23, 2013.]

GREYHOUND LINES, INC., Cross-complainant and Appellant, v. DEPARTMENT OF CALIFORNIA HIGHWAY PATROL, Cross-defendant and Respondent.

## COUNSEL

LaFollette, Johnson, DeHaas, Fesler & Ames, Alfred W. Gerisch, Jr., Mark M. Williams and David J. Ozeran for Cross-complainant and Appellant.

Kamala D. Harris, Attorney General, Steven M. Gevercer, Assistant Attorney General, Alberto González, James W. Walter and Robert L. Collins, Deputy Attorneys General, for Cross-defendant and Respondent.

## OPINION

**LEVY, Acting P. J.**—This case arises out of an early morning collision between a Greyhound bus and a disabled sport-utility vehicle (SUV) on State Route 99 (SR 99). The SUV had been involved in a one-vehicle accident approximately three minutes earlier and had come to rest on its side blocking at least one lane. The bus collision resulted in the deaths of three bus passengers and the three occupants of the SUV.

In the aftermath of this collision, appellant, Greyhound Lines, Inc. (Greyhound), was sued for damages based on its alleged negligence. In response, Greyhound cross-complained against various cross-defendants including respondent, Department of the California Highway Patrol (CHP). Greyhound alleged that CHP was negligent in that, upon being alerted to the first accident by passing motorists, the CHP 911 operator failed to enter the code for lane blockage and thus the CHP response was unnecessarily delayed.

The trial court sustained CHP's demurrer without leave to amend and dismissed Greyhound's cross-complaint as against CHP. Greyhound argues the trial court erred because CHP owed a duty of care to the bus passengers based on the 911 operator's assurances to the 911 callers that CHP was on the way. According to Greyhound, the CHP operator lulled the callers into a false sense of security and dissuaded them from rendering further assistance.

The trial court's ruling was correct. Law enforcement personnel, including CHP officers, have no duty to come to the aid of another unless a special relationship exists between the injured party and the officers. Such a special

relationship arises if an officer's affirmative act creates the peril, or contributes to, increases, or changes the risk that otherwise exists. Here, no special relationship existed between CHP and the injured bus passengers. Accordingly, the judgment will be affirmed.

## BACKGROUND

Since this appeal follows the sustaining of a demurrer, we take as true all well-pleaded factual allegations of the cross-complaint. (*Sullivan v. City of Sacramento* (1987) 190 Cal.App.3d 1070, 1074 [235 Cal.Rptr. 844] (*Sullivan*).)

In the early morning, the SUV struck the center divider on SR 99 near the McKinley Avenue off-ramp in Fresno. This collision left the SUV on its side blocking either the No. 1 or the No. 2 lane. The SUV's headlights and taillights were out and its dark undercarriage was facing oncoming traffic.

At 2:14 a.m., a truckdriver reported this collision to a CHP 911 operator as a vehicle rollover accident that was blocking traffic lanes of SR 99. A second motorist also called 911 and told the CHP 911 operator that "he saw in his rear view mirror that 'a car just turned over north-bound 99' and that he did not know if any other motorist struck the overturned vehicle." The 911 operator responded, "Okay . . . We'll go ahead and put this out."

The CHP 911 operator entered some of this information into the computer-aided dispatch system. However, the operator did not include that the disabled SUV was blocking traffic lanes despite such lane blockage being one of the CHP's highest priorities. Due to this input error, the call was assigned to a CHP unit that was at the Fresno jail rather than the unit that was located at Belmont Avenue and SR 99, one off-ramp away from the incident.

At 2:17 a.m., a call to the CHP 911 operator reported that a Greyhound bus had collided with a car and that the accident vehicles were off the road near the McKinley off-ramp. At approximately 2:20 a.m., the CHP dispatcher requested that any available CHP unit respond.

This accident spawned complaints for personal injury and wrongful death filed by aggrieved bus passengers. Greyhound and its driver were named as defendants based on alleged negligence.

Greyhound filed a cross-complaint against the estate of the driver of the SUV, the owner of the SUV, California's Department of Transportation (Caltrans), and CHP. As against CHP, Greyhound alleged that the CHP 911 operators negligently and recklessly failed to include the crucial lane blockage information in the original accident description. Greyhound further alleged that this omission was a proximate cause of the bus collision because it resulted in an unreasonable delay in CHP's response to the emergency.

The trial court sustained CHP's demurrer to the cross-complaint without leave to amend. The court concluded that (1) the CHP 911 operators did not breach a mandatory duty; (2) Greyhound failed to allege a special relationship that created a duty of care; (3) CHP is immune from liability to provide police protection services under Government Code section 845; and (4) CHP 911 operators have qualified immunity from liability for providing necessary emergency services under Health and Safety Code section 1799.107.

## DISCUSSION

### 1. *The judgment is appealable.*

CHP argues that the judgment dismissing it from the cross-complaint is not appealable because Caltrans is still a party to this action. According to CHP, both it and Caltrans are departments within the Business, Transportation and Housing Agency of the State of California, and as departments within the same agency, are not separate entities for purposes of a judgment in this matter. Therefore, CHP asserts, this appeal violates the one final judgment rule. CHP acknowledges that state agencies may be treated as separate entities (*People ex rel. Lockyer v. Superior Court* (2004) 122 Cal.App.4th 1060, 1076–1080 [19 Cal.Rptr.3d 324] (*Lockyer*)) but argues that, because CHP and Caltrans are departments within one agency, they are the same entity for purposes of this judgment.

■ However, the fact that CHP and Caltrans are departments within one agency does not deprive them of their separate identities. As noted by the court in *Lockyer,* "[e]ach agency *or department* of the state is established as a separate entity, under various state laws or constitutional provisions." (*Lockyer, supra,* 122 Cal.App.4th at p. 1078, italics added.) CHP and Caltrans are governed by different statutory schemes and have different organizations, powers and duties.

■ CHP is under the control of a commissioner appointed by the governor. (Veh. Code, §§ 2100, 2107.) The commissioner has the duty to assume and discharge all responsibilities and carry out all purposes of this department. (§ 2108.) These purposes include enforcing laws regulating the

operation of vehicles and the use of the highways, investigating traffic accidents, protecting state property, and providing physical security for constitutional officers and legislators. (§ 2400.) In order to carry out these duties, the commissioner may make and enforce such rules and regulations as may be necessary. (§ 2402.) CHP maintains possession and control of both its records and its real and personal property. (§ 2104.)

The purpose of Caltrans is to "provide adequate, safe, and efficient transportation facilities and services for the movement of people and goods at reasonable cost." (Gov. Code, § 14000, subd. (c).) Through Caltrans, the state's goal is to encourage and stimulate the development of mass transportation, implement and maintain a state highway system, assist in the development of an air transportation system, develop a rail passenger network, and encourage research and development of transportation technology. (§ 14000.5.) Caltrans is under the control of a director, who is appointed by the governor, and who has the power and duty to carry out the purposes of Caltrans. (§§ 14002, 14003, 14005.) Thus, in the ordinary course of their duties, CHP and Caltrans are distinct and separate government entities. (Cf. *Lockyer, supra*, 122 Cal.App.4th at p. 1078.)

Further, the allegations against these two departments are completely different. As discussed above, Greyhound alleges that the CHP operators negligently failed to include the lane blockage information in the original dispatch. As against Caltrans, Greyhound alleges that SR 99 was in a dangerous condition. Although the state is ultimately responsible for any torts committed by its departments, following this dismissal, there are no issues left regarding CHP. This situation is analogous to a case where a person is a party to an action in multiple capacities. When a judgment determines the rights of the party in one capacity but not another, that judgment may be final even though the action is still pending with respect to the rights of the party in a different capacity. (*First Security Bank of Cal. v. Paquet* (2002) 98 Cal.App.4th 468, 474 [119 Cal.Rptr.2d 787].)

Moreover, the two departments have conducted themselves as separate parties. Each party is represented by its own counsel and each filed a separate responsive pleading to the cross-complaint.

In this matter, CHP and Caltrans are separate parties. The dismissal of the cross-complaint against CHP is a final adverse adjudication of Greyhound's rights against a distinct party. Therefore, this order is appealable. (*Kantor v. Housing Authority* (1992) 8 Cal.App.4th 424, 429 [10 Cal.Rptr.2d 695].)

2. *CHP did not owe the bus passengers a duty of care.*

In analyzing the propriety of the trial court's ruling, our first inquiry is whether, under general principles of tort law, CHP owed a duty of care to the

bus passengers. (*Williams v. State of California* (1983) 34 Cal.3d 18, 22–23 [192 Cal.Rptr. 233, 664 P.2d 137] (*Williams*).) This issue is decided as a matter of law. (*Sullivan, supra*, 190 Cal.App.3d at p. 1075.) The question of whether CHP is statutorily immune from liability does not arise unless it is determined that CHP owed a duty of care to the bus passengers and thus would be liable in the absence of such immunity. (*Williams, supra*, 34 Cal.3d at p. 22.)

■ In the absence of a special relationship, a person who has not created a peril has no duty to come to the aid of another. (*Clemente v. State of California* (1985) 40 Cal.3d 202, 212 [219 Cal.Rptr. 445, 707 P.2d 818] (*Clemente*).) However, if a volunteer who, having no initial duty to do so, undertakes to come to the aid of another, i.e., the "good Samaritan," he or she is under a duty to exercise due care in performance. Such a volunteer is liable if (1) his or her failure to exercise due care increases the risk of harm or (2) the harm is suffered because of the other's reliance upon the undertaking. (*Williams, supra*, 34 Cal.3d at p. 23.)

The rules concerning the duty, or lack thereof, to come to the aid of another apply to law enforcement personnel, including CHP. (*Williams, supra*, 34 Cal.3d at p. 24.) Accordingly, recovery for injuries caused by the failure of CHP to respond to requests for assistance, to investigate properly, or to investigate at all will be denied unless CHP personnel induced reliance based on a promise, express or implied, that they would provide protection. (*Clemente, supra*, 40 Cal.3d at p. 212.)

■ Under the good Samaritan doctrine, CHP may have a duty to members of the public to exercise due care when CHP voluntarily assumes a protective duty toward a certain member of the public and undertakes action on behalf of that member thereby inducing reliance, when an express promise to warn of a danger has induced reliance, or when the actions of CHP place a person in peril or increase the risk of harm. (*Clemente, supra*, 40 Cal.3d at p. 213.) In other words, to create a special relationship and a duty of care, there must be evidence that CHP " 'made misrepresentations that induced a citizen's detrimental reliance [citation], placed a citizen in harm's way [citations], or lulled a citizen into a false sense of security and then withdrew essential safety precautions.' " (*Camp v. State of California* (2010) 184 Cal.App.4th 967, 978 [109 Cal.Rptr.3d 676].)[1] Nonfeasance that leaves the citizen in exactly the same position that he or she already occupied cannot support a finding of duty of care. Affirmative conduct or misfeasance on the part of CHP that induces reliance or changes the risk of harm is required. (*Id.* at p. 979.)

---

[1] Appellant's "Motion Requesting Judicial Notice" filed November 20, 2012, is granted.

Greyhound argues that a special relationship was created between CHP and the bus passengers when the CHP operators assured the 911 callers that emergency assistance was on the way and then failed to properly input the dispatch codes. According to Greyhound, the 911 callers relied on this promise and were therefore dissuaded from stopping and rendering assistance on their own. Greyhound asserts that if CHP had responded in a timely manner to the first accident, the bus collision could have been prevented.

Greyhound's argument fails for several reasons. First, Greyhound's theory expands the special relationship exception whereas California courts have made it plain that the special relationship rule is not expansive but, rather, is narrow and is reserved for a very limited class of unusual cases. (*Minch v. Department of California Highway Patrol* (2006) 140 Cal.App.4th 895, 905 [44 Cal.Rptr.3d 846].)

More importantly, CHP did not either induce the bus passengers to rely on CHP to their detriment or increase their risk of harm. The nonfeasance of the CHP 911 operators, i.e., their failure to include the lane blockage information in the dispatch, left the bus passengers in exactly the same position they already occupied. Without detrimental reliance by, or an increase in the risk of harm to, the bus passengers, there is no special relationship.

Further, Greyhound's claim that, in the absence of the CHP operators' assurances to the 911 callers, those callers would have stopped and assisted on their own and prevented the bus collision is replete with speculation and conjecture. The 911 callers had no duty to come to the aid of the disabled SUV. (*Williams, supra*, 34 Cal.3d at p. 23.) Additionally, only three minutes separated the reports of the two accidents. Greyhound's speculative scenario does not establish a special relationship between CHP and the bus passengers. (Cf. *Antique Arts Corp. v. City of Torrance* (1974) 39 Cal.App.3d 588, 590–591 [114 Cal.Rptr. 332].) If we were to accept Greyhound's argument and find a special relationship under these circumstances, it would serve to make CHP virtually an insurer of safety on the highway instead of an enforcer of the Vehicle Code. (*Bonds v. State of California ex rel. Cal. Highway Patrol* (1982) 138 Cal.App.3d 314, 320 [187 Cal.Rptr. 792].)

In sum, CHP did not undertake any action that induced detrimental reliance on the part of the bus passengers, placed the bus passengers in peril, or increased the bus passengers' risk of harm. Accordingly, there was no special relationship between CHP and the bus passengers and thus CHP did not owe the bus passengers a duty of care. Since we have determined that there was no special relationship imposing a duty of care, we need not reach the immunity issues. (*Foremost Dairies, Inc. v. State of California* (1986) 190 Cal.App.3d 361, 366 [232 Cal.Rptr. 70, 232 Cal.Rptr. 71].)

## DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to respondent.

Cornell, J., and Detjen, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 1, 2013, S208894.