Filed 10/2/24  Rodrigues v. Dept. of the Cal. Highway Patrol CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| ISAAC RODRIGUES,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>DEPARTMENT OF THE CALIFORNIA HIGHWAY PATROL,<br><br>Defendant and Respondent. | F086604<br><br>(Super. Ct. No. 20CECG03187)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  D. Tyler Tharpe, Judge.

Michael S. Warda for Plaintiff and Appellant.

Rob Bonta, Attorney General, Jodi L. Cleesattle, Assistant Attorney General, Christine E. Garske and Jeremy C. Thomas, Deputy Attorneys General, for Defendant and Respondent.

-ooOoo-

The decedent in this wrongful death lawsuit was struck by an automobile while traversing State Route 99 on foot.  The decedent's father (plaintiff) blames the State of California for his son's death.  According to plaintiff's theory, the decedent would still be

alive but for his interactions with two California Highway Patrol (CHP) officers several hours prior to the fatal incident.

Plaintiff appeals from a judgment entered after a demurrer was sustained without leave to amend. The trial court was correct in determining plaintiff's allegations are legally insufficient to state a claim for negligence. Plaintiff has not shown that the pleading deficiencies can be cured by amendment. We therefore affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### *Factual Allegations*

The following summary is derived from plaintiff's original and first amended complaints. All quotes are taken from those pleadings, with all original bolding of the text omitted. We understand plaintiff's use of the term "gore point" to mean the triangular area separating an on- or off-ramp from the main lanes of a highway. (*Taulbee v. EJ Distribution Corp.* (2019) 35 Cal.App.5th 590, 592.) California law prohibits motorists from driving into or through a gore point. (Veh. Code, § 21651; see *Taulbee*, at pp. 596–597.)

On September 27, 2019, at approximately 12:30 a.m., two CHP officers patrolling State Route 99 saw a vehicle "askew in a gore point" next to a southbound on-ramp. The officers "pulled over to check on [the] welfare" of the vehicle's occupant, i.e., decedent. They soon learned the vehicle had a flat tire and was "out of gas."

The decedent was "on the phone" with his mother during his interactions with the CHP officers. She "heard officers correct [him] after he stated his location[,] as [the decedent] was nowhere near where he believed he was." Despite knowing the decedent "was not aware of his present location," the officers did not investigate "whether [he] was under the influence of drugs [or] alcohol, or if he was suffering from a medical emergency [that] would negatively affect his mental state such as a stroke."

According to plaintiff's original complaint, the CHP officers "assisted [the decedent] with pushing his vehicle to the right shoulder of the on ramp." Put differently,

2.

the vehicle was moved from the left side of the on-ramp to the right side but otherwise remained at the same southbound location. Plaintiff's first amended complaint more generally alleges the officers "left the scene after assisting Decedent with pushing his car to the side of the highway."

The CHP officers allegedly knew the decedent "was not in a healthy state of mind" when they left him "stranded on the side of the highway." "Less than three hours after the [officers'] encounter with [the decedent], he was dead on a *northbound* lane of State Route 99." (Italics added.) The decedent had "walked out onto the roadway and [was] struck by a motorist." "After the fatal accident, … [the officers] discovered three empty methadone bottles." The pleadings do not indicate where the empty bottles were found.

### *Procedural History*

In March 2020, plaintiff submitted a claim to the State of California pursuant to Government Code section 910 et seq. The claim was denied the following month. Plaintiff filed this lawsuit in October 2020, erroneously naming the State of California and the CHP as separate defendants. (See Gov. Code, § 940.6 [defining "'State'" for purposes of actions against public entities]; *Colombo v. State of California* (1991) 3 Cal.App.4th 594, 598 ["lawsuits against state agencies are in effect suits against the state"].) We will collectively refer to the State of California and the CHP as "defendant."

Plaintiff's original complaint asserted two theories of liability for wrongful death: negligence by the CHP officers (first cause of action) and negligent hiring by the State of California (second cause of action). The first cause of action was based on the officers' "failure to ensure [the decedent's] mental state and safety." They were faulted for not performing "a field sobriety test" or further investigating the decedent's unspecified "odd mannerisms and conduct" and unspecified "discrepancies in his statements."

Defendant responded to the original complaint with a demurrer. The demurrer was sustained with leave to amend the first cause of action but without leave to amend

3.

the second cause of action.  The trial court's rejection of the negligent hiring claim has not been challenged.

Plaintiff amended the complaint by adding factual allegations regarding what the decedent's mother overheard during his encounter with the CHP, and also what the officers "knew or should have known" in terms of the dangers he would face if left "stranded on the side of the highway in the middle of the night."  Other additions included case citations and statements purporting to summarize the applicable law.  The CHP officers were alleged to have owed the decedent "a protective duty by inducing detrimental reliance."  They allegedly "breached their protective duty" by "failing to ensure [the decedent] was safe while in a highly dangerous area" and "leaving the scene while [the decedent] was still stranded on the highway."

Defendant filed a second demurrer.  In May 2023, the trial court issued a written decision sustaining the demurrer without leave to amend.  The court noted the conclusory nature of defendant's arguments regarding the existence of a "protective duty."  The ruling states, "Plaintiff fails to explain how the officers' decision to move decedent's vehicle from the gore point to a position of safety on the right shoulder of the highway exposed him to a greater risk of harm or created detrimental reliance."  The court also addressed plaintiff's "heav[y]" reliance upon *Mann v. State of California* (1977) 70 Cal.App.3d 773 and observed that *Mann*'s precedential value has been eroded by subsequent case law.

Plaintiff's timely notice of appeal was filed in July 2023.

## DISCUSSION

### I.  Standard of Review

"In reviewing an order sustaining a demurrer, we examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory."  (*T.H. v. Novartis Pharmaceuticals Corp*. (2017) 4 Cal.5th 145, 162.)

"We give the complaint a reasonable interpretation, considering all material facts that are properly pleaded and matters that may be judicially noticed, but not contentions, deductions or conclusions of fact or law." (*Gray v. Quicken Loans, Inc.* (2021) 61 Cal.App.5th 524, 527.) We must also consider whether any pleading defects could be cured by an amendment. (*Novartis Pharmaceuticals Corp.*, at p. 162.)

In a lawsuit brought against a public entity under the Government Claims Act, negligence claims must be pleaded with particularity. (*Lopez v. Southern Cal. Rapid Transit Dist.* (1985) 40 Cal.3d 780, 795.) And "where the pleaded facts of negligence and injury do not naturally give rise to an inference of causation[,] the plaintiff must plead specific facts affording an inference the one caused the other[]." (*Christensen v. Superior Court* (1991) 54 Cal.3d 868, 900–901; see *Golick v. State of California* (2022) 82 Cal.App.5th 1127, 1146.) The complaint is liberally construed, but the plaintiff "has the burden of showing that the facts pleaded are sufficient to establish every element of the cause of action and overcoming all of the legal grounds on which the trial court sustained the demurrer." (*Martin v. Bridgeport Community Assn., Inc.* (2009) 173 Cal.App.4th 1024, 1031.) Plaintiffs also have the burden of demonstrating the ability to cure any pleading defects. (*T.H. v. Novartis Pharmaceuticals Corp.*, *supra*, 4 Cal.5th at p. 162.)

## II. Legal Overview

"The elements of a wrongful death cause of action are '(1) a "wrongful act or neglect" on the part of one or more persons that (2) "cause[s]" (3) the "death of [another] person."'" (*Arista v. County of Riverside* (2018) 29 Cal.App.5th 1051, 1060, quoting *Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 390.) When relying on a theory of negligence, the plaintiff must plead the existence of a legal duty owed to the decedent; a breach of that duty; and proximate causation of death. (*Arista*, at p. 1060, citing

*Vasilenko v. Grace Family Church* (2017) 3 Cal.5th 1077, 1083.)  The existence of a duty is a question of law.  (*Vasilenko*, at p. 1083.)

"As a general rule, a person who has not created a peril has no duty to come to the aid of another 'no matter how great the danger in which the other is placed, or how easily he could be rescued, unless there is some relationship between them which gives rise to a duty to act.  [Citations.]'  [Citation.]  This rule applies to police officers as well as to other citizens:  The police owe duties of care only to the public at large and, except where they enter into a 'special relationship,' have no duty to offer affirmative assistance to anyone in particular."  (*Benavidez v. San Jose Police Dept.* (1999) 71 Cal.App.4th 853, 859–860.)

The special relationship doctrine was once thought to be "an expanding concept in tort law."  (*Mann v. State of California*, *supra*, 70 Cal.App.3d at p. 779.)  The *Mann* opinion exemplified that perspective.  In *Mann*, a traffic officer on patrol in his marked vehicle "saw two cars stranded in the speed-change lane of the San Bernardino Freeway."  (*Id*. at p. 776.)  The officer "pulled his vehicle in behind them, turned on his rearward flashing amber light, and tried to get the forward car started.  In doing so he stood in the speed-change lane himself and failed to instruct the occupants of the stalled cars and other interested motorists such as plaintiff, some of whom had gotten out of their cars, to get back into them and to avoid standing between the stalled cars.  A few minutes after a tow truck operator appeared at the scene, the officer left to resume his normal patrol without advising any of those present that he was leaving."  (*Id*. at pp. 776–777.)  Shortly thereafter, a motorist "sideswiped one of the two cars and struck the people around them."  (*Id*. at p. 777.)

The *Mann* court reversed a directed verdict entered in favor of the defendant, concluding the traffic officer was "legally responsible for the victims of the accident being in their exposed position [and] could therefore have been found to have contributed in a substantial way to the causation of the accident."  (*Mann v. State of California*,

6.

*supra*, 70 Cal.App.3d at p. 777.)  The opinion states, in relevant part, "[O]nce a state traffic officer has chosen to investigate the plight of specific persons on a freeway and informed himself of the foreseeable danger to them from passing traffic, a special relationship requiring him to protect them by readily available means arises and liability may attach if the officer's limited duty to protect these people under these special circumstances is not performed." (*Id*. at p. 780.)  Applying this broad proposition to the facts of the case, the *Mann* court held the officer could be liable for leaving the stranded motorists "in a dangerous, unprotected position on a freeway after he had investigated and presumably become fully aware of their plight." (*Id*. at p. 779.)

As indicated above, the "potentially broad sweep of the opinion in *Mann* has been limited repeatedly by subsequent opinions interpreting it." (*Hernandez v. KWPH Enterprises* (2004) 116 Cal.App.4th 170, 179.)  In *Mikialian v. City of Los Angeles* (1978) 79 Cal.App.3d 150, the same court that decided *Mann* implied that the special duty in *Mann* existed not simply because the officer stopped to investigate and became aware of the motorists' plight, but because he affirmatively undertook to protect them by "park[ing] his vehicle with its rearward flashing lights behind the stalled vehicles." (*Mikialian*, at p. 164.)  "Then the officer left to resume normal patrol, without advising those present that he was leaving, thereby withdrawing the protection of the flashing lights and leaving the stalled vehicles and pedestrians without any protective devices." (*Ibid*., citing *Mann v. State of California*, *supra*, 70 Cal.App.3d at p. 780.)

In *Davidson v. City of Westminster* (1982) 32 Cal.3d 197, the California Supreme Court approved of *Mann* only to the extent "that a special relationship may be predicated upon a victim's *dependence* upon the police for protection." (*Davidson*, at p. 207; see *id*. at p. 208 ["*Mann*, properly read, is a simple application of the 'good Samaritan' doctrine" as described in Rest.2d Torts, §§ 323, 324].)  If a police officer's voluntary assistance "lull[ed] the injured parties into a false sense of security," there is potential liability for conduct that "contributed to, increased, or changed the risk which would have otherwise

7.

existed." (*Davidson*, at p. 208; accord, *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1129; *Williams v. State of California* (1983) 34 Cal.3d 18, 25.) But liability will not attach, even in cases involving a "failure to investigate properly," if the officers' conduct did not induce "reliance on a promise, express or implied, that they would provide protection." (*Williams*, at p. 25.)

It is now settled "that the special relationship rule is not expansive, as *Mann* suggested; rather, it is narrow, to be applied in a limited class of unusual cases." (*Minch v. Department of California Highway Patrol* (2006) 140 Cal.App.4th 895, 905.) "The rule is not triggered 'simply because police officers responded to a call for assistance and took some action at the scene.' [Citations.] And it is not enough to assert that the law enforcement officers took control of the situation." (*Ibid.*; accord, *Camp v. State of California* (2010) 184 Cal.App.4th 967, 977.) Special relationships between police and individual citizens do not exist unless (1) "an officer voluntarily assumes a duty to provide a particular level of protection, and then fails to do so [citations], or … [(2)] an officer undertakes affirmative acts that increase the risk of harm to the plaintiff." (*Zelig v. County of Los Angeles*, *supra*, 27 Cal.4th at p. 1129.)

In summary, "CHP may have a duty to members of the public to exercise due care when CHP voluntarily assumes a protective duty toward a certain member of the public and undertakes action on behalf of that member thereby inducing reliance, … or when the actions of CHP place a person in peril or increase the risk of harm." (*Greyhound Lines, Inc. v. Department of California Highway Patrol* (2013) 213 Cal.App.4th 1129, 1136.) "Nonfeasance that leaves the citizen in exactly the same position that he or she already occupied cannot support a finding of duty of care. Affirmative conduct or misfeasance on the part of CHP that induces reliance or changes the risk of harm is required." (*Ibid.*)

8.

### III.    Analysis

#### A.    The Demurrer Was Properly Sustained

Plaintiff argues that he pleaded "detrimental reliance" and a "change to the risk of the victim." Merely including those words and phrases in the operative complaint is not sufficient. (See *Catsouras v. Department of California Highway Patrol* (2010) 181 Cal.App.4th 856, 879 ["there is no allegation that the CHP officers who responded to the scene engaged in any act upon which plaintiffs detrimentally relied"].) "[I]n order to state a valid claim under [a] theory of increased risk of harm, the complaint must plead facts—not mere conclusions." (*Golick v. State of California*, *supra*, 82 Cal.App.5th at p. 1146.)

"To create a special relationship and a duty of care, there must be evidence that the police [did something] 'that induced a citizen's detrimental reliance [citation], placed a citizen in harm's way [citations], or lulled a citizen into a false sense of security and then withdrew essential safety precautions.'" (*Camp v. State of California*, *supra*, 184 Cal.App.4th at p. 978.) Neither the complaint nor the opening brief (plaintiff did not file a reply brief) explains how the CHP officers induced reliance. There is likewise no explanation of the "detrimental" aspect of such reliance. The notion of an increased risk of harm is entirely absent from the complaint; it is a conclusory allegation made for the first time on appeal. Moreover, the pleadings make clear the decedent was not killed at the southbound location where the officers provided assistance. He was struck by a motorist several hours later in "a northbound lane" on the opposite side of the highway. (See *Mikialian v. City of Los Angeles*, *supra*, 79 Cal.App.3d at p. 165 [no liability where defendant officers "did not involve themselves at all in plaintiff's status vis-a-vis traffic passing the place" where he was struck by a hit-and-run driver].)

Plaintiff focuses on the decedent being "under the influence or otherwise seriously confused" during his encounter with the officers. He insinuates that the officers' knowledge of the decedent's altered mental state obligated them to protect the decedent

9.

from engaging in dangerous behavior, i.e., walking along the highway. This district rejected a similar argument in *Stout v. City of Porterville* (1983) 148 Cal.App.3d 937.

In *Stout*, the appellant was stopped by a police officer while walking along a city street at 1:30 a.m. The officer questioned him "regarding the reason for his presence in the area and regarding his state of sobriety." (*Stout v. City of Porterville*, *supra*, 148 Cal.App.3d at p. 940.) The officer ultimately let the appellant go on his way. He was later hit by a car and sustained injuries. (*Ibid.*)

The *Stout* appellant sued the city's police department, alleging "that at the time he was questioned by [the officer], he was … intoxicated and was unable to provide reasonable care for himself." (*Stout v. City of Porterville*, *supra*, 148 Cal.App.3d at p. 940.) The pleadings alleged negligence by the officer in failing to "place him in some form of custody, either arrest and jail or custody in a detoxification unit." The omission to act allegedly "caused the subsequent injuries [appellant] suffered when he was later struck by a vehicle." (*Ibid.*) The trial court sustained a demurrer to the first amended complaint without leave to amend, and the judgment of dismissal was affirmed on appeal.

Relying on *Mann v. State of California*, *supra*, 70 Cal.App.3d 773, the *Stout* appellant argued that a special relationship arose when the officer, who allegedly knew he "was relatively helpless and in peril[,] … chose to stop and investigate" and "'became aware of the foreseeable danger to [him].'" (*Stout v. City of Porterville*, *supra*, 148 Cal.App.3d at p. 941.) According to this theory, the investigatory stop put the appellant "'in a position of safety.'" (*Ibid.*) By releasing the appellant and going about his own business, the officer supposedly withdrew the protection and "'returned [the appellant] to a position of peril.'" (*Ibid.*, italics omitted.) This district rejected those arguments, noting the appellant "did *not* allege that the officer took affirmative action which contributed to, increased, or changed the risk which would have otherwise existed." (*Id.* at p. 945.) Also missing were any allegations of the officer volunteering to take care of the appellant. There were no alleged "words or conduct [that] induced him to rely on the

officer's protection," and he "did not allege that the officer in any way induced him into a false sense of security." (*Ibid.*)

Here, the CHP officers are not alleged to have expressly or impliedly offered to provide "a particular level of protection" in relation to the decedent's mental state. (*Zelig v. County of Los Angeles*, *supra*, 27 Cal.4th at p. 1129.) Instead, the pleadings allege the officers did not investigate whether he was intoxicated or mentally impaired in some other way. A "failure to investigate properly, or the failure to investigate at all," is not actionable unless the officers "induced reliance on a promise, express or implied, that they would provide protection." (*Williams v. State of California*, *supra*, 34 Cal.3d at p. 25.) Knowledge or belief that a person is intoxicated or mentally unwell is not sufficient, by itself, to establish a special relationship and protective duties. (See *Hernandez v. KWPH Enterprises*, *supra*, 116 Cal.App.4th at pp. 172, 178–179 [paramedics had no duty to prevent death of mentally unstable woman who exited ambulance and ran into traffic on "Highway 99"]; *Stout v. City of Porterville*, *supra*, 148 Cal.App.3d at p. 945; *Jackson v. Clements* (1983) 146 Cal.App.3d 983, 986–988 [police contact with intoxicated minor did not create duty to protect the minor from accepting a ride home with a drunk driver].)

Also instructive is *Hernandez v. City of San Jose* (1993) 14 Cal.App.4th 129. Police in that case conducted a traffic stop of a vehicle full of teenagers. Upon discovering none of the occupants were licensed, the police had the car towed. "[N]o ride was offered the young men and the officers refused to let them go in the tow truck." (*Id*. at p. 132.) These events happened around 11:00 p.m., and the minors had to find their own way home. They eventually obtained a ride from someone, and that driver got into a single-car accident at approximately 1:00 a.m. Everyone involved in the earlier police encounter was injured, and one of the young men died. (*Ibid*.)

On appeal from a grant of summary judgment in favor of the defendants, the *Hernandez* court agreed the police officers "had no duty to take charge of the young men or to make other transportation arrangements for them." (*Hernandez v. City of San Jose*,

*supra*, 14 Cal.App.4th at p. 135.)  The opinion explains:  "Neither [the decedent's] mere presence in the stopped vehicle nor the fact he was a minor established any special relationship or protective duty toward him that could be imposed upon the officers. [Citations.]  That the officers impounded the vehicle did not create any peril to [him] and the other young men as none of them could have lawfully driven the vehicle.  Nor did the impounding of the vehicle and alleged refusal to let the young men get a ride with the tow truck driver increase any risk of harm to [the decedent] that otherwise existed.  A one-car accident caused by the driver of the vehicle the young men headed home with was no more a risk before the officers impounded the vehicle than it was after."  (*Ibid*.)

In this case, two CHP officers stopped to see why the decedent's automobile was "askew in a gore point."  There are no allegations of voluntary assistance beyond helping push the inoperable vehicle out of the gore point and over to the shoulder of the highway. "Past voluntary acts of assistance do not entitle the benefited party to 'detrimentally rely upon' the Good Samaritan officer to confer future benefits, at least in the absence of an express promise by the officer that future assistance will be forthcoming.  While a Good Samaritan must use due care within the voluntary undertaking, he is not thereafter an indentured bodyguard to the victim who claims detrimentally to have relied on the volunteer for future assistance."  (*City of Santee v. County of San Diego* (1989) 211 Cal.App.3d 1006, 1017.)

There are no pleaded facts suggesting detrimental reliance on the officers' conduct or an increased risk of harm.  The dangers associated with being stranded on the highway at midnight were present before and after the decedent's encounter with the CHP.  A "generic claim that the officers did not adequately protect him" from foreseeable risks is not enough.  (*Minch v. Department of California Highway Patrol*, *supra*, 140 Cal.App.4th at p. 909.)  "Affirmative conduct or misfeasance on the part of CHP that induces reliance or changes the risk of harm is required."  (*Greyhound Lines*, *Inc. v. Department of California Highway Patrol*, *supra*, 213 Cal.App.4th at p. 1136.)

### B. Leave To Amend Was Properly Denied

The remaining issue is whether leave to amend was appropriately denied. As noted, "the plaintiff bears the burden of proving an amendment would cure the defect." (*Tindell v. Murphy* (2018) 22 Cal.App.5th 1239, 1251.) To meet this burden, "[t]he plaintiff must identify some legal theory or state facts that can be added by amendment to change the legal effect of his or her pleading." (*Ibid*.; accord, *Hernandez v. City of Pomona* (2009) 46 Cal.4th 501, 520, fn. 16; *HFH, Ltd. v. Superior Court* (1975) 15 Cal.3d 508, 513, fn. 3.)

Plaintiff's appellate brief concludes with this sentence: "[I]n the event the Court finds any deficiency in the Complaint, the Plaintiff respectfully requests leave to amend." Plaintiff does not explain how the complaint could be amended to cure its deficiencies. While it is not our role to make arguments for the parties, the following paragraph on page 14 of the opening brief might be viewed as a curative proposal:

> "Had the officers left the vehicle askew, other officers, first responders or even good Samaritan motorists may have stopped to assist. In that case, it is entirely reasonable that another party would have assisted the decedent and assisted him to a safe location, not on the freeway. However, the officers in this case interfered and placed him in another location where presumably others would not be motivated to provide assistance."

There is some authority for the proposition "that there may be a duty to refrain from conduct which prevents others from giving assistance." (*Clemente v. State of California* (1985) 40 Cal.3d 202, 213.) But plaintiff's argument does not suggest the CHP officers *prevented* others from coming to the decedent's aid. Nor has plaintiff proposed adding such factual allegations to the complaint. He only speculates about the facts currently alleged in the pleadings.

Defendant responds by noting this district rejected a similar argument in *Greyhound Lines, Inc. v. Department of California Highway Patrol*, *supra*, 213 Cal.App.4th 1129. There, two motorists called 911 to report a disabled vehicle blocking one or more lanes of traffic on State Route 99. (*Id*. at p. 1133.) The dispatcher made a

data entry mistake that "unnecessarily delayed" the CHP's response, and a bus collided with the disabled vehicle approximately three minutes after the first emergency call. On appeal from the sustaining of a demurrer without leave to amend, the cross-complainant bus company argued, inter alia, that "the CHP [dispatcher] lulled the callers into a false sense of security and dissuaded them from rendering further assistance." (*Id.* at p. 1132.) The "speculative scenario" was held insufficient to establish a special relationship between CHP and the injured parties. (*Id.* at p. 1137.)

The *Greyhound* case is not directly on point, but we agree with defendant that liability cannot be predicated upon a theoretically diminished motivation for third parties to render assistance. (See *Lopez v. City of San Diego* (1987) 190 Cal.App.3d 678, 683–684 [rejecting theory of increased peril based on hypothetical possibility of third-party aid].) The operative complaint indicates the decedent had a working cell phone when CHP officers left him in essentially the same location as they found him, the only difference being the movement of his vehicle from one side of the on-ramp to the other. The factual allegations do not support a theory of negligence based on the prevention of third-party assistance, and plaintiff does not contend such a theory could be pleaded.

## DISPOSITION

The judgment is affirmed. Respondent shall recover its costs on appeal, if any.


PEÑA, Acting P. J.

WE CONCUR:


SMITH, J.


SNAUFFER, J.

14.